## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MCGRAW HILL LLC, BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC d/b/a MACMILLAN LEARNING, CENGAGE LEARNING, INC., ELSEVIER INC., ELSEVIER B.V., MACMILLAN HOLDINGS, LLC, and PEARSON EDUCATION, INC., | **Civil Action No.** |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | **1. COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*); and** <br> **2. TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)** |
| DOES 1 - 35 d/b/a BTESTBANKS.COM, CMZ91.COM, DIGITALMARKET.SHOP, FULLTESTBANK.COM, GRADEXAM.COM, LIVETESTBANK.COM, MANUAL-SOLUTIONS.COM, MYNURSINGTESTPREP.COM, MYSHOP.4STUDENTBOOK.COM, NAFASSY.COM, NURSEMATERIALS.COM, NURSESTEST.COM, NURSINGDOC.COM, NURSINGMASTERY.IO, NURSYLAB.COM, PRIMEXAM.COM, SELLDOCSHERO.COM, SLYSTUDENT.COM, SOLUTIONMANUAL.STORE, SOLUTIONMANUAL.SITE, SOLUTIONS-STUDY321.COM, SOLUTIONSTOBOOKS.COM, STUDENTMAGIC.INDIEMADE.COM, TAKETESTBANK.COM, TB4CLASS.COM, TESTBANKALL.COM, TESTBANKANS.COM, TESTBANKAPLUS.COM, TESTBANKBOOK.COM, TESTBANKONE.COM, TESTBANKS4U.COM, TESTBANKSAFE.COM, TESTBANKSHOP.CC, TESTBANKTRUST.COM, TESTBANKZONE.NET, and TEX-CETERA.WS, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

McGraw Hill LLC, Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning, Cengage Learning, Inc., Elsevier Inc., and Pearson Education, Inc. (collectively, the "Publishers"), and Macmillan Holdings, LLC and Elsevier B.V. (collectively, with the Publishers, "Plaintiffs"), by and through their undersigned counsel, hereby file their Complaint asserting claims of copyright and trademark infringement against Defendants Does 1 – 35 (collectively, "Defendants"), doing business as, respectively, btestbanks.com, cmz91.com, digitalmarket.shop, fulltestbank.com, gradexam.com, livetestbank.com, manual-solutions.com, mynursingtestprep.com, myshop.4studentbook.com, nafassy.com, nursematerials.com, nursestest.com, nursingdoc.com, nursingmastery.io, nursylab.com, primexam.com, selldocshero.com, slystudent.com, solutionmanual.store, solutionmanual.site, solutions-study321.com, solutionstobooks.com, studentmagic.indiemade.com, taketestbank.com, tb4class.com, testbankall.com, testbankans.com, testbankaplus.com, testbankbook.com, testbankone.com, testbanks4u.com, testbanksafe.com, testbankshop.cc, testbanktrust.com, testbankzone.net, and tex-cetera.ws (the "Infringing Sites" or "Sites").  Plaintiffs allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters.

## NATURE OF THE CASE

1.      The Publishers are leading educational publishers committed to creating and publishing copyrighted works that advance learning.  Each year, they publish thousands of educational works, including textbooks and corresponding test banks and/or instructor solutions manuals ("ISMs"), which are important supplemental materials used by professors and instructors to teach their classes and assess their students' academic performance.

2.      Defendants own, control, and/or operate the Infringing Sites, which are websites

devoted to the sale of illegal products that infringe others' intellectual property.  Without any license or authorization, Defendants knowingly and intentionally reproduce the Publishers' registered, copyrighted test banks and ISMs and distribute those new copies to students throughout the United States.  Defendants do so for their own profit, to facilitate academic cheating, and at the expense of Plaintiffs, authors, educators, and students.

3.      Certain Defendants also knowingly and intentionally engage in trademark counterfeiting by using unauthorized copies of the registered trademarks at issue herein to sell products on the Infringing Sites and mislead consumers into believing that the infringing products originate from the Publishers, which they do not.

4.      Compounding the problem, Defendants hide behind the anonymity of the internet to sell their infringing products without revealing and, indeed, actively concealing, their true identities by providing false contact information to consumers and the third-party intermediaries on whose services they rely to operate the Infringing Sites.

5.      Without Court intervention, Defendants will continue to operate their illegal businesses and infringe Plaintiffs' intellectual property rights.  Accordingly, Plaintiffs bring this action for injunctive relief and damages to stop and seek redress for Defendants' knowing and willful copyright and trademark infringement.

## PARTIES

### The Plaintiffs

6.      Plaintiff McGraw Hill LLC ("McGraw Hill") is a Delaware limited liability company with its principal place of business at 8787 Orion Place, Columbus, Ohio 43240, as well as offices in New York and a long history of doing business in New York.  McGraw Hill asserts copyright and trademark claims herein.

7.      Plaintiff Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning") is a New York limited liability company with its principal place of business at 120 Broadway, New York, New York 10271, and is a wholly owned subsidiary of Plaintiff Macmillan Holdings, LLC.  Macmillan Learning asserts copyright claims herein.

8.      Plaintiff Macmillan Holdings, LLC ("Macmillan Holdings") is a New York limited liability holding company with its principal place of business at 120 Broadway, New York, New York 10271.  Macmillan Holdings asserts trademark claims herein.

9.      Plaintiff Cengage Learning, Inc. ("Cengage") is a Delaware corporation with its principal place of business at 200 Pier Four Boulevard, Boston, Massachusetts 02210, as well as a long history of doing business in New York.  Cengage asserts copyright and trademark claims herein.

10.     Plaintiff Elsevier Inc. ("Elsevier") is a Delaware corporation with its principal place of business at 230 Park Avenue, New York, New York 10169.  Elsevier asserts copyright claims herein.

11.     Plaintiff Elsevier B.V. is a corporation organized under the laws of the Netherlands with its registered office in Amsterdam.  Elsevier and Elsevier B.V. are affiliated companies that share a parent company.  Elsevier B.V. asserts trademark claims herein.

12.     Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation with its principal place of business at 221 River Street, Hoboken, New Jersey 07030 and a long history of doing business in New York.  Pearson asserts copyright and trademark claims herein.

## The Defendants

13.     Defendant Doe 1 is a merchant who has reproduced, distributed, and sold

unauthorized copies of the Publishers' test banks, ISMs, and/or textbooks ("Infringing Works") through the Infringing Site btestbanks.com.  The identity and location of Doe 1 are unknown to Plaintiffs at this time.

14.     Defendant Doe 2 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site cmz91.com.  The identity and location of Doe 2 are unknown to Plaintiffs at this time.

15.     Defendant Doe 3 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site digitalmarket.com.  The identity and location of Doe 3 are unknown to Plaintiffs at this time.

16.     Defendant Doe 4 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site fulltestbank.com.  The identity and location of Doe 4 are unknown to Plaintiffs at this time.

17.     Defendant Doe 5 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site gradexam.com.  The identity and location of Doe 5 are unknown to Plaintiffs at this time.

18.     Defendant Doe 6 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site livetestbank.com.  The identity and location of Doe 6 are unknown to Plaintiffs at this time.

19.     Defendant Doe 7 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site manual-solutions.com.  The identity and location of Doe 7 are unknown to Plaintiffs at this time.

20.     Defendant Doe 8 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site mynursingtestprep.com.  The identity and location

of Doe 8 are unknown to Plaintiffs at this time.

21.     Defendant Doe 9 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site myshop.4studentbook.com.  The identity and location of Doe 9 are unknown to Plaintiffs at this time.

22.     Defendant Doe 10 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site nafassy.com.  The identity and location of Doe 10 are unknown to Plaintiffs at this time.

23.     Defendant Doe 11 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site nursematerials.com.  The identity and location of Doe 11 are unknown to Plaintiffs at this time.

24.     Defendant Doe 12 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site nursestest.com.  The identity and location of Doe 12 are unknown to Plaintiffs at this time.

25.     Defendant Doe 13 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site nursingdoc.com.  The identity and location of Doe 13 are unknown to Plaintiffs at this time.

26.     Defendant Doe 14 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site nursingmastery.io.  The identity and location of Doe 14 are unknown to Plaintiffs at this time.

27.     Defendant Doe 15 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site nursylab.com.  The identity and location of Doe 15 are unknown to Plaintiffs at this time.

28.     Defendant Doe 16 is a merchant who has reproduced, distributed, and sold

Infringing Works through the Infringing Site primexam.com.  The identity and location of Doe 16 are unknown to Plaintiffs at this time.

29.     Defendant Doe 17 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site selldocshero.com.  The identity and location of Doe 17 are unknown to Plaintiffs at this time.

30.     Defendant Doe 18 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site slystudent.com.  The identity and location of Doe 18 are unknown to Plaintiffs at this time.

31.     Defendant Doe 19 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Sites solutionmanual.store and solutionmanual.site. The identity and location of Doe 19 are unknown to Plaintiffs at this time.

32.     Defendant Doe 20 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site solutions-study321.com.  The identity and location of Doe 20 are unknown to Plaintiffs at this time.

33.     Defendant Doe 21 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site solutionstobooks.com.  The identity and location of Doe 21 are unknown to Plaintiffs at this time.

34.     Defendant Doe 22 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site studentmagic.indiemade.com.  The identity and location of Doe 22 are unknown to Plaintiffs at this time.

35.     Defendant Doe 23 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site taketestbank.com.  The identity and location of Doe 23 are unknown to Plaintiffs at this time.

36.     Defendant Doe 24 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site tb4class.com.  The identity and location of Doe 24 are unknown to Plaintiffs at this time.

37.     Defendant Doe 25 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbankall.com.  The identity and location of Doe 25 are unknown to Plaintiffs at this time.

38.     Defendant Doe 26 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbankans.com.  The identity and location of Doe 26 are unknown to Plaintiffs at this time.

39.     Defendant Doe 27 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbankaplus.com.  The identity and location of Doe 27 are unknown to Plaintiffs at this time.

40.     Defendant Doe 28 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbankbook.com.  The identity and location of Doe 28 are unknown to Plaintiffs at this time.

41.     Defendant Doe 29 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbankone.com.  The identity and location of Doe 29 are unknown to Plaintiffs at this time.

42.     Defendant Doe 30 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbanks4u.com.  The identity and location of Doe 30 are unknown to Plaintiffs at this time.

43.     Defendant Doe 31 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbanksafe.com.  The identity and location of Doe

31 are unknown to Plaintiffs at this time.

44.     Defendant Doe 32 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbankshop.cc.  The identity and location of Doe 32 are unknown to Plaintiffs at this time.

45.     Defendant Doe 33 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbanktrust.com.  The identity and location of Doe 33 are unknown to Plaintiffs at this time.

46.     Defendant Doe 34 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site testbankzone.net.  The identity and location of Doe 34 are unknown to Plaintiffs at this time.

47.     Defendant Doe 35 is a merchant who has reproduced, distributed, and sold Infringing Works through the Infringing Site tex-cetera.ws.  The identity and location of Doe 35 are unknown to Plaintiffs at this time.

48.     Once Plaintiffs obtain information as to the Doe Defendants' true identities, Plaintiffs will amend the Complaint to include such individuals and/or entities as named defendants.

**JURISDICTION AND VENUE**

49.     This is an action arising under the Copyright Act, 17 U.S.C. § 101 *et seq*., and the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.  The Court thus has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.

50.     The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302(a)(1) and/or (3).  Defendants have transacted business and/or contracted to supply goods in New York and Plaintiffs' claims arise from those activities, and/or Defendants have committed

tortious acts of infringement outside of New York causing injury to Plaintiffs in New York.  In particular, Defendants offer to sell and sell Infringing Works to consumers in New York, among other states, via highly interactive websites that are continuously accessible and target, sell, and/or deliver goods to consumers in New York.  Further, through their online businesses, Defendants derive substantial revenue from interstate or international commerce, and Defendants expected or reasonably should have expected their infringing acts to have consequences in New York, where three Plaintiffs have their principal place of business and the other Plaintiffs do substantial business in and/or have significant connections to New York.  In addition, the Court has general personal jurisdiction under N.Y. C.P.L.R. § 301 over any Defendants who are domiciled in New York, including, potentially, Does 4 (fulltestbank.com) and 13 (nursingdoc.com), who operate Infringing Sites that advertise New York locations.

51.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendants conduct, transact, and/or solicit business related to their Infringing Sites in this District, may be found in this District, tortiously injured Plaintiffs in this District, and/or a substantial part of the acts of infringement occurred in this District.

## FACTUAL ALLEGATIONS

### A.      Plaintiffs' Businesses, Copyrights, and Trademarks

52.     The Publishers are five of the leading educational publishers in the United States. They develop, market, distribute, and sell a wide range of traditional and digital educational content and tools to professionals, educators, and students.  Their publications include physical and digital textbooks, which are widely available in the U.S. marketplace to consumers for a fee. The Publishers' textbooks are among the most popular and widely used titles in their fields.

53.     The Publishers also publish test banks and/or ISMs, which are tailored to the

pedagogical approach of the textbooks to which they correspond.  Test banks are sets of questions and, typically, corresponding answers, to be used by the professor or instructor who assigned the textbook for his or her course.  ISMs are guides that provide answers and solutions to questions contained within the textbook, and may also provide professors and instructors with other guidance on how to use the textbook and the materials contained therein to teach their courses.  Specifically, professors and instructors use these supplemental materials to create lesson plans, homework assignments, exams, and/or for grading purposes.  Accordingly, to preserve their pedagogical value, test banks and ISMs are not generally distributed to the public.

54.     Test banks and ISMs contain protected, creative expression, including additional expression beyond what is in the textbook.  Myriad creative efforts go into creating and selecting questions, whether for inclusion in the textbook, test bank, or ISM, and into creating the answers and solutions in the test banks and ISMs.  Countless decisions are made concerning wording, examples, approach, depth, and other substantive details.

55.     The Publishers' works are published under trademarks that are well-known and highly respected.  These trademarks and the goodwill of the business associated with them are of tremendous value and have become associated in the public mind with Plaintiffs' rich histories and reputations for quality in the publishing industry.  Plaintiffs have invested decades of effort in building a trusted reputation in the publishing industry.

56.     The Publishers own or exclusively control the copyrights in their works or derivative works described in Exhibit A hereto ("Authentic Works"), which are registered with the U.S. Copyright Office.  Given the blatantly illegal nature of Defendants' conduct, and the fact that copies of numerous Infringed Works beyond the Authentic Works are sold on the Infringing Sites, Exhibit A is a non-exhaustive, representative list that may be updated as this

case proceeds.

57.     Cengage, Elsevier B.V., Macmillan Holdings, McGraw Hill, and Pearson (collectively, "Trademark Plaintiffs") are the owners and/or registrants under 15 U.S.C. § 1127 of their respective trademarks and/or service marks described in Exhibit B hereto (the "Marks"). The Marks, which are registered on the Principal Register of the U.S. Patent and Trademark Office, are distinctive indications of origin and may also be incontestable under 15 U.S.C. § 1065.  Like Exhibit A, Exhibit B is a non-exhaustive, representative list that may be updated as this case proceeds.

58.     Consumers who see a copy of the Marks in connection with the advertising and sale of Infringing Works are likely to be confused and believe, incorrectly, that the Infringing Works originate from the Publishers or the Trademark Plaintiffs and that the Infringing Sites' illicit products are authorized.

**B.      The Infringing Sites and Defendants' Willful Infringement**

59.     Defendants own, control, and/or operate the Infringing Sites, and likely others not yet identified by Plaintiffs, in furtherance of the unlawful conduct alleged herein.  Through the Infringing Sites, Defendants engage in and profit from the sale of unauthorized digital copies of the Authentic Works, among other Infringing Works, in clear violation of Plaintiffs' intellectual property rights.

60.     The apparent sole objective of the Infringing Sites is to make money from infringement and cheating.  Defendants are not authorized to reproduce or distribute digital copies of the Publishers' works or use the Marks for any purpose.  Nonetheless, Defendants have copied and sold to the public an untold number of Infringing Works.

61.     The Infringing Sites are highly interactive.  Purchasers or prospective purchasers

can interact with the Infringing Sites, including to communicate with Defendants and complete their transactions.  Visitors to the Infringing Sites can often scroll through or search for the Sites' listings of Infringing Works.  Then, at the touch of a few keystrokes, and armed with a credit card or other means of online payment, visitors can purchase and download the Infringing Works.

62.    The Infringing Sites often advertise that they deliver digital copies of Infringing Works instantly and/or that the files delivered are compatible with any e-reader, tablet, or similar device.  Through purchases Plaintiffs made from the Infringing Sites, Plaintiffs have confirmed that, just as Defendants advertise, they distribute to consumers digital copies of Infringing Works.

63.    The Infringing Sites have individual product pages for the Infringing Works they sell, including product pages that display counterfeit copies of the Marks, such as on unauthorized images of the textbooks that correspond to the Infringing Works that the Defendant is selling.  Counterfeit copies of the Marks also sometimes appear on the Infringing Works themselves.

64.    Defendants rely on the anonymity of the internet to hide their true identities.  None of the content on the Infringing Sites reveals the names of those who operate the Sites.  Consumers and prospective consumers are given generic email addresses as contacts.  Most of the Infringing Sites do not provide physical addresses or, if they do, provide false addresses.  Some Defendants also use a proxy service for domain name registration and/or provide materially false information to the domain name registrars.

65.    While online pirates such as Defendants are notorious for, and adept at, hiding their identities and locations, including switching their service providers to avoid being shut

down, Defendants currently utilize the services of a number of intermediaries, including those in the United States, in connection with their infringing activities.  In particular, certain Defendants obtain domain name registration services from companies such as GoDaddy, Amazon, NameSilo, and NameCheap; web hosting services from companies such as Google and NameCheap; proxy services from Cloudflare; cloud storage services from companies such as Google and MediaFire; and online advertising services from companies such as Google and Microsoft.  Further, Defendants typically use payment processors, such as PayPal and Stripe, to process payments for the Infringing Works.  Defendants then transfer their ill-gotten proceeds to banks in the United States and abroad.  Also, Defendants regularly use email for purposes of operating their online businesses, including by providing email addresses to customers on their Sites or in connection with the acceptance of payment for or the delivery of the Infringing Works.

66.      Some of the Infringing Sites are or appear to be related to each other and/or operated by the same individual or group of individuals.  While pirates often use inaccurate or fictitious contact information to register and operate their websites, some of the Defendants use the same contact information (albeit false contact information) and/or operate Infringing Sites with identical or nearly identical content.

67.      Plaintiffs have made purchases of infringing copies of the Authentic Works from the Infringing Sites, including purchases made from New York.  Additionally, the Trademark Plaintiffs have captured evidence of the unauthorized use of identical or substantially indistinguishable reproductions of their Marks.

68.      By the very nature of their illegal businesses, Defendants are well aware of the enormous scope of their infringement.  Defendants knowingly and intentionally designed and operate businesses devoted to selling pirated copies of Plaintiffs' and other publishers'

13

copyrighted works.  Some Defendants have also received notices of infringement from Plaintiffs, but ignored the notices and kept infringing.

69.     The illicit inventories of most Infringing Sites are substantial, including hundreds of listings, or more, of Infringing Works.  Defendants also continue to expand their illegal businesses, including by adding "new arrivals" to the Infringing Sites, which, of course, represent nothing more than additional infringements.

70.     Defendants engaged in the infringing activity described herein with the full knowledge that they have not been granted any license to copy, distribute, or sell digital (or other) copies of the Publishers' test banks, ISMs, and textbooks.  Defendants also know that they are not authorized to use copies of the Marks in advertising and selling the Infringing Works. And Defendants are fully aware that they encourage cheating.  Some Defendants even shamelessly advertise to students that they are providing access to materials that are not typically available to students.

71.     Defendants' awareness of the unlawful nature of their businesses is further demonstrated by their concerted efforts to conceal their true names and physical locations, which frustrate enforcement efforts to stop their unlawful activity.

## C.     <u>Defendants Cause Substantial Injury to Plaintiffs</u>

72.     Defendants have harmed Plaintiffs, including in this District, and are aware that they have caused such harm.  Defendants' flagrant piracy steals the fruits of the Publishers' and their authors' creative efforts and monetary investments.

73.     The Publishers are not compensated for the unauthorized sale of their works by Defendants.  Likewise, the Trademark Plaintiffs are not compensated for the unauthorized use of the Marks on and in connection with the Infringing Sites.

74.     By providing widely available and wholly unauthorized access to the Publishers' test banks and ISMs, Defendants' infringing activity compromises the value of these important supplemental works and, as a result, jeopardizes the adoption of the corresponding textbooks, causing an indeterminable amount of financial harm.

75.     Financial harm to the Publishers has a ripple effect impacting their authors as well as the Publishers' ability to continue to invest in their publications and the creation of new works that benefit education as a whole.

76.     Defendants' unlawful activities also corrupt the educational process.  Students who cheat to obtain better grades instead of studying and asking questions are depriving themselves of valuable learning, taking unfair advantage of students who do not cheat, and depriving their professors or instructors of valuable feedback.  Cheating can also lead to unqualified students entering in the workforce.  Moreover, when the utility and value of Plaintiffs' test banks and/or ISMs are diminished, even greater demands are placed on educators, causing them to reinvent the wheel and cutting into valuable time that could be used to otherwise enhance the educational experience.

77.     As Plaintiffs' supplemental materials comprise a key part of the educational process, when they are copied and distributed without authorization, and when these illicit products are associated with the Marks, the result is also harm to Plaintiffs' reputations in the educational communities they serve.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement (17 U.S.C. § 101 *et seq.*) –
### Asserted by the Publishers

78.     The Publishers re-allege and incorporate herein by reference the allegations contained in the foregoing paragraphs 1-77 as though set forth fully herein.

79.     The Authentic Works listed in Exhibit A constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued by the U.S. Copyright Office to the Publishers or their predecessors or licensors.   Each registration is either within three months of publication or pre-dates commencement of the infringement complained herein.   At all relevant times, the Publishers have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in the Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

80.     Defendants, without the permission of the Publishers, and with knowledge of their copyrights, have reproduced the Authentic Works and sold to the public unauthorized copies of the Authentic Works.   Such reproduction and distribution constitute infringement of the Publishers' exclusive rights under copyright pursuant to 17 U.S.C. § 501 in violation of 17 U.S.C. §§ 106(1) and 106(3).

81.     The infringement of the Publishers' rights in each of their respective Authentic Works constitutes a separate and distinct act of infringement.

82.     Defendants' unlawful conduct, as set forth above, was willful.   Defendants had knowledge that their conduct was unlawful and in violation of the Publishers' copyrights. Defendants acted intentionally and in reckless disregard of the Publishers' copyrights.

83.     As a result of Defendants' unlawful and deliberate conduct as set forth above, the Publishers have been, and will continue to be, damaged.

84.     Defendants' actions described above have caused and will continue to cause irreparable damage to the Publishers, for which the Publishers have no remedy at law.   Unless this Court restrains Defendants from continuing their infringement of the Publishers' copyrights,

these injuries will continue to occur in the future.  The Publishers are accordingly entitled to injunctive relief restraining Defendants from further infringement, as well as other appropriate equitable relief, as specified below.

## SECOND CLAIM FOR RELIEF

**Trademark Infringement and Counterfeiting (15 U.S.C. § 1114) –
Asserted by the Trademark Plaintiffs against Defendants Identified in Exhibit B**

85.     The Trademark Plaintiffs re-allege and incorporate herein by reference the allegations contained in the foregoing paragraphs 1-77 as though set forth fully herein.

86.     At all relevant times, the Trademark Plaintiffs have been and still are the owners of all rights, title, and interest in and to their respective Marks listed in Exhibit B, which are valid and protectable trademarks that are registered with the U.S. Patent and Trademark Office.

87.     The Defendants identified in Exhibit B have infringed the Marks through their use in commerce, without the Trademark Plaintiffs' consent, of a reproduction, counterfeit, copy, or colorable imitation of the Marks in connection with the sale, offering for sale, distribution, and/or advertising of the Publishers' works, and such use is likely to cause confusion, to cause mistake, and/or deceive the public.

88.     The spurious, counterfeit marks on the Infringing Works that Defendants have distributed, or that appear on product pages or other advertisements through which Defendants have offered to sell Infringing Works, are identical to and/or substantially indistinguishable from the Marks.

89.     Defendants have acted intentionally and in reckless disregard of the Trademark Plaintiffs' trademark rights.  Defendants are intentionally using the Marks in Defendants' advertising or marketing, or on the goods that Defendants distribute or services they provide, thus infringing upon the Trademark Plaintiffs' trademark rights in order to further their own

business enterprises.

90.     Defendants' unlawful conduct, as set forth above, was willful.  Defendants had knowledge that their conduct was unlawful and would cause confusion, mistake, or deception.

91.     As a result of Defendants' unlawful conduct as set forth above, the Trademark Plaintiffs have been, and will continue to be, damaged.

92.     Defendants' infringement and counterfeiting of the Marks, as described above, has caused and will continue to cause irreparable injury to the Trademark Plaintiffs, including to their reputation, and to the goodwill of the Marks, for which the Trademark Plaintiffs have no adequate remedy at law.  Unless this Court restrains Defendants from continuing their infringing activities, these injuries will continue to occur in the future.  The Trademark Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement, as well as other appropriate equitable relief, as specified below.

## **PRAYER FOR RELIEF**

By reason of the facts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.     Judgment on the claims set forth above, including that Defendants' infringement of the Authentic Works and Marks identified in Exhibits A and B, including as they may be amended, is intentional and willful.

2.     Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.     An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of Infringing Works with documents relating to all such purchases and sales;

4.      An order requiring Defendants to pay the Publishers such damages as the Publishers have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at the Publishers' election, pursuant to 17 U.S.C. § 504;

5.      An order enjoining Defendants and other appropriate persons or entities under 17 U.S.C. § 502 and Federal Rule of Civil Procedure 65(d) from further infringing and facilitating infringement upon the Publishers' respective copyrights;

6.      An order enjoining the relevant Defendants and other appropriate persons or entities under 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65(d) from further infringing and facilitating infringement upon the Trademark Plaintiffs' respective trademarks;

7.      An order requiring the relevant Defendants to pay the Trademark Plaintiffs such damages as the Trademark Plaintiffs have sustained as a consequence of Defendants' infringement and counterfeiting of their trademarks, as alleged above, including statutory damages or treble damages, at the Trademark Plaintiffs' election, pursuant to 15 U.S.C. § 1117;

8.      An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and files of Infringing Works (and all derivative works thereof), all devices by means of which such infringing files have been created, and other material bearing imitations, including confusingly similar variations, of Plaintiffs' respective copyrights and trademarks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

9.      An order seizing the domain names associated with Defendants' Infringing Sites and turning them over to Plaintiffs;

10.     Prejudgment and post-judgment interest at the applicable rate;

11.     Plaintiffs' attorney's fees, expenses, and costs of suit; and

12.     Such other and further relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.

DATED:  04/01/2023

Respectfully submitted,

Matthew J. Oppenheim
Michele H. Murphy (*pro hac vice application to be filed*)
Danae Tinelli
Kevin Lindsey

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
Tel:  (202) 480-2999
matt@oandzlaw.com
michele@oandzlaw.com
danae@oandzlaw.com
klindsey@oandzlaw.com

*Attorneys for Plaintiffs*